UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON SHERK,

        Plaintiff,

v.                                   Case No. 1:13-cv-678
                                   Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Supplemental Security Income (SSI).

Plaintiff was born on August 17, 1987 (AR 228).[1]  He alleged a disability onset date of January 31, 2007, filing his application for SSI on May 22, 2009 (AR 88, 228).  Plaintiff completed the 12th grade, attended some special education classes and stated that he "received in home tutoring for much of the last two years of high school" (AR 247).  He had previous employment as a cashier and a customer service representative (AR 241).  Plaintiff identified his disabling conditions as bipolar disorder and anxiety (AR 240).  An Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on November 20, 2011 (AR 86-97).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months.  *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir.

1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since his SSI application date of May 22, 2009 (AR 88).  At the second step, the ALJ found that plaintiff had severe impairments of bipolar disorder and anxiety disorder (AR 88). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 89).  Specifically, plaintiff did not meet the requirements of Listings 12.04 (affective disorders) or 12.06 (anxiety related disorders) (AR 89-91).  The ALJ decided at the fourth step:

> [T]hat the claimant has the residual functional capacity to perform a full range of work at all exertional levels.  However, the claimant's ability to work is subject to the following nonexertional limitations: he may only do simple routine tasks that require no interaction with the public, only occasional interaction with coworkers and supervisors, and once per week he would need an additional break lasting 15 to 30 minutes.

(AR 91).  The ALJ also determined that plaintiff "has no past relevant work" (AR 95).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the national and regional economy (AR 96).  Specifically, plaintiff could perform the following unskilled work in Michigan, all at the light exertional level: cleaner, light housekeeping (14,000 jobs); light equipment assembler (700 jobs); and folding machine operator, copy machine, office equipment (1,500 jobs) (AR 96).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time since May 22, 2009, the date the application for SSI was filed (AR 97).

4

### III. ANALYSIS

Plaintiff has raised three issues on appeal.[2]

**A.      The ALJ failed to give proper weight to the findings and opinion of plaintiff's treating psychiatrist, Verle Bell, M.D., as required by 20 C.F.R. § 416.927(d).**

Plaintiff contends that the ALJ failed to give proper weight to the opinions of Dr. Bell,  a psychiatrist who had treated plaintiff since 2003.  A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

---

[2] The Court notes that plaintiff listed a fourth statement of error, i.e., "Because the ALJ failed to follow the appropriate standards, the hypothetical posed to the VE failed to address all Plaintiff's established impairments on his ability to work."  Plaintiff's Brief at p. iii.  However, his brief did not include a section addressing this alleged error.  Accordingly, this issue is waived.

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record.  *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Bell completed a Mental Impairment Questionnaire on September 20, 2011 (AR 601-06).  The doctor first saw plaintiff on December 22, 2003 and had seen him about every three months (AR 601).  The doctor diagnosed plaintiff with bipolar I disorder, premature birth, asthma and hypothyroidism, with the following clinical findings: plaintiff angers easily with difficulty regaining control and he has labile moods (AR 601).  Plaintiff's signs and symptoms include: mood disturbance; difficulty concentrating; persistent disturbances of mood or affect; bipolar syndrome with a history of episodic manic and depressive syndromes; intense and unstable interpersonal relationships and impulsive and damaging behavior;  manic syndrome; deeply ingrained, maladaptive patterns of behavior; easy distractibility; and pressured speech (AR 602).

Dr. Bell indicated on the form that plaintiff would be unable to meet competitive standards of work in areas including, but not limited to: remembering work-like procedures; maintaining concentration for two hour segments; maintaining regular attendance and punctuality; completing a normal workday and workweek without interruptions from psychologically based

6

symptoms; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in a routine work setting; and dealing with normal work stress (AR 603).  In addition, plaintiff would be unable to meet competitive standards in interacting appropriately with the general public and in maintaining appropriate behavior (AR 603).  Dr. Bell did not answer a question asking if plaintiff had a low IQ or reduced intellectual functioning (AR 604).

When asked to explain his opinions with reference to specific test results, Dr. Bell did not include any results; rather he stated "Pt. has concrete thinking; is unable to pay attention; struggled in school (AR 604).  The doctor indicated that plaintiff's psychiatric condition did not exacerbate his experience of pain or physical conditions (AR 604).  With respect to functional limitations, Dr. Bell found that plaintiff had marked difficulty in maintaining social functioning and in maintaining concentration, persistence or pace (AR 604).  The doctor indicated that plaintiff had "[t]hree or more episodes of decompensation within 12 months, each at least two weeks long," and that he had "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate" (AR 605).

Dr. Bell indicated that plaintiff would miss more than four days of work each month due to his impairment or treatment (AR 606).  In addition, the doctor stated that plaintiff's "moods cause unpredictable agitation and aggression which would not be tolerated at any job" (AR 606).  Finally, Dr. Bell did not believe that plaintiff would be capable of managing his own benefits (AR 606).

On September 29, 2011, one week after plaintiff's administrative hearing, Dr. Bell gave a statement to plaintiff's counsel in an apparent attempt to supplement and clarify the evidence presented at the administrative hearing (AR 607-08). The doctor stated that the "panic attacks" described by plaintiff at the hearing were consistent with his diagnoses of bipolar disorder and severe anxiety, and that as of his last appointment, plaintiff had been having panic attacks every other day that lasted from a half hour to an hour (AR 607). Dr. Bell also clarified that plaintiff was not a malingerer (AR 607-08).

The ALJ addressed Dr. Bell's opinions as follows:

As for the opinion evidence, Dr. Bell's opinion receives little weight because Dr. Bell's treatment records do not support the opinion's conclusions regarding the claimant's functional level (Exhibits 15F and 16F). Dr. Bell gives the claimant a much more limited functional level in the Medical Source Statement than is indicated by Dr. Bell's own records or even the claimant's testimony (Testimony and Exhibit 15F). In assessing the claimant's functional level, Dr. Bell failed to mention the strong impression during treatment that part of the claimant does not necessarily want to get better and that being disabled would get him out of hard responsibilities faced by someone his age (Exhibit 13F/3, 9). Elsewhere Dr. Bell notes that the claimant is looking for a magic pill, but not too magic as he is going for a disability and needs to be a little bit sick to get the disability, which he sees as the whole solution in life (Exhibit 13F/6).

Dr. Bell acknowledges he has a major mental illness, but notes that the claimant's attitudes make it hard to treat him (Exhibit 13F/6). I do note that there was an attempt to rehabilitate Dr. Bell's opinion by explaining his above negative remarks were not malingering, but an effect of his axis II personality disorder (Exhibit 16F/l). However, my primary reason for discounting Dr. Bell's opinion is the inconsistency of that opinion with the file as a whole. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality that is worth mentioning, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

8

(AR 94-95).

   The ALJ's decision included a detailed history of plaintiff's activities, history and treatment which support his determination to give Dr. Bell's opinion little weight. In reviewing whether plaintiff met a listed impairment at step 3, the ALJ found that plaintiff had a mild restriction in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulty with regard to concentration, persistence, or pace, and one or two episodes of decompensation (AR 89). The ALJ explained:

> I am aware that the claimant's treating psychiatrist reported greater limitations; upon which it is argued that the claimant meets the listing requirements of 12.04 for his bipolar syndrome (Exhibits 15E/1 and 15F). However, I find that the record does not support that level of severity (Exhibit 15F). Indeed, the claimant testified that Dr. Bell has doubled the time between appointments from three months to six months (Testimony and Exhibit 14F/3).

(AR 89).

   The ALJ noted that plaintiff has been hospitalized once for mental illness since the alleged onset date (AR 89). However, the ALJ noted plaintiff's testimony that the hospitalization was not necessary; according to plaintiff, it "was not decompensation, but another attempt to gain his mother's attention, which the hospitalization records support (Exhibits 2F/12, 16; and, 4F/22)." (AR 90).

   The ALJ addressed Dr. Bell's opinions with regard to these incidents of decompensation:

> I am aware that Dr. Bell indicated in response to the Medical Impairment Questionnaire that that [sic] the claimant had three or more episodes of decompensation within 12 months, each of which were at least two weeks long and that even minimal increase in mental demands or changes to environment would be predicted to cause decompensation (Exhibit 15F/5). As noted above, the record reveals one episode of decompensation since the alleged onset date and the claimant's hospitalization was for three days (Exhibit 2F/16). In addition, the record

9

directly refutes Dr. Bell's assertion that the claimant is unable to withstand changes to his environment or an increase in mental demands. The record establishes that the claimant was able to move out of his mother's home, hold a job, and live independently (Exhibit 7F/3, 8). Dr. Bell's own treatment records indicate that the claimant has better self control and now catches himself and pulls himself back together rather than having a full "meltdown" (Exhibit 14F/2).

(AR 91).

The ALJ also went through an extensive list of plaintiff's activities which were inconsistent with Dr. Bell's opinions regarding the severity of plaintiff's condition and his inability to perform work-related activities. Rather than summarize this list, the Court will reproduce it:

Regarding his activities of daily living, the claimant has admitted that he can manage his own personal care; prepare simple meals; launder his clothing; vacuum; take out trash; complete his chores without help or encouragement; go outside daily; ride in a car; go out alone when he walks; manage his finances; and, play golf (Exhibit 5E/3, 4). In addition, at least twice a month for less than 30 minutes, he shops in stores and by computer for video games, music, and other entertainment items (Exhibit 5E/4). Every day, the claimant listens to music, watches television, uses a computer, and etches glass (Exhibit 5E/5).

As to his ability to maintain social functioning, the claimant no longer isolates [sic] (Exhibit 14F/2). The claimant can interact with others twice a week through video games, golf, online talks, and hang out with friends (Exhibit 5E/1, 5). Although the claimant previously alleged he had problems getting along with others, he now gets along pretty well with his family and neighbors; and he has never had any problem getting along with employers and coworkers (Exhibits 5E/6 and 7F/3, 4). The claimant has five friends, who stop by to keep him company about every other day, and he likes hang out with them and go for walks when they are available (Exhibits 7F/4 and 14F/2). Once or twice a week he goes out and does something fun with someone (Exhibit 7F/6). It was clinically observed that he was cooperative in the consultative examination, had a quick wit, and a good sense of humor (Exhibits 6F/11; 7F/4, 6; and, 14F/2, 7).

Although the claimant alleged difficulties in the area of concentration, persistence, or pace, he acknowledged that he could finish what he starts; follow written instructions very well; follow spoken instructions all right; and, usually get along with authority figures (Exhibit 5E/6, 7). He stated that he feels calm and has good energy during the day; can play long games on Facebook; and, has beaten the video games Black Ops and Modern Warfare 2 (Testimony and Exhibit 14F/2). Although the claimant alleged he had concentration and memory problems, such as

needing reminders to take his medication, the claimant lived alone and there is no
evidence he received reminders or went off his medication during that time (Exhibit
5E/3 and 7F/3, 8). In addition, [he] can remember to go places and attend to his
personal care without any reminders; he recited his entire mental health history from
memory at his consultative examination; had no difficulties with the memory test;
and, demonstrated quick response times during the examination (Exhibits 5E/2, 5;
7F/5, 6; and, 14F/2, 6).

(AR 89-90).

      In his decision, the ALJ noted evidence that plaintiff has been resistant to treatment

and medication recommendations (AR 94). Although plaintiff's psychiatrist has recommended

steady counseling, plaintiff attends counseling only sporadically (AR 94, 514). While plaintiff chose

a provider located far away, the record reflected that his caseworker, Jan Barr-Sipe, was able to

transport him without charge to his counseling appointments  (AR 94, 445, 546, 593).  The ALJ

noted only one explanation for plaintiff's failure to continue counseling, i.e., the counselor required

payment and plaintiff at one point stated that he had no income or insurance (AR 94, 514).  That

being said, the ALJ found that plaintiff did not attempt to find local, free or reduced fee counseling,

even though Ms. Barr-Sipe had provided similar services to plaintiff in his home without charge (AR

94, 373-470).  The record also reflects that plaintiff was not interested in treatment referrals and

chose not to participate in programs (AR 94, 366).

      The ALJ found that plaintiff  "fares no better with medication compliance" (AR 94).

For example, plaintiff admitted during his consultative examination that he had a prescription for

Xanax, but that he had not filled it (AR 94, 514).  Dr. Bell noted that plaintiff failed to take Adderall

on a regular basis (AR 94, 586).  Plaintiff has a prior history of refusing to take medication (AR 94,

352) and did not return for services when medication alterations failed (AR 94, 593).  From this

record the ALJ concluded that "[t]he claimant's failure to followup on recommendations made by

the treating doctor suggests that his symptoms may not have been as serious as has been alleged in connection with this application and appeal" (AR 94).

Based on this record, the ALJ did not err in evaluating Dr. Bell's opinion and gave good reasons for the weight assigned to the doctor's opinion. Accordingly, plaintiff's claim of error will be denied.

> **B.** **The ALJ failed to consider all medical evidence of record, including the treatment records of Ryan Jaarsma, PsyD, which are consistent with Dr. Bell's records and support a finding of disability.**

Plaintiff contends that the ALJ erred in failing to address the treatment records of Ryan Jaarsma, Ph.D., from 2008 and 2009. Contrary to plaintiff's contention, the record reflects that the ALJ addressed Dr. Jaarsma's records, noting that the doctor "counseled the claimant for depression, anger, mood swings, and anxiety problems from approximately 2002 through September 2009 (Exhibits 3E/5; 5F; and, 11F)" and that "[o]n September 9, 2009, Dr. Jaarsma referred the claimant to a local source because the claimant was unable to travel the distance to see Dr. Jaarsma and because the claimant was stable (Exhibit 11F/4)" (AR 92). The ALJ does not need to address each treatment note which appears in the administrative record. "Neither the ALJ nor the [Appeals] Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Commissioner of Social Security Administration*, 397 Fed. Appx. 195, 199 (6th Cir. 2010). *See Daniels v. Commissioner of Social Security*, 152 Fed. Appx. 485, 489 (6th Cir. 2005) ("an ALJ is not required to discuss all the

evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered").  Accordingly, this claim of error will be denied.[3]

      **C.     The ALJ's decision is not supported by substantial evidence because she failed to properly follow 20 C.F.R. § 416.929 and other rules and case law in assessing plaintiff's credibility.**

Plaintiff contends that the ALJ did not properly evaluate his credibility.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence."  *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact  .  .  .  [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility."  *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007).  Nevertheless, an ALJ's credibility determinations regarding subjective complaints

---

[3] The Court notes that plaintiff included a paragraph stating that the ALJ erred by assigning great weight to a consultative examiner, Anne Kantor, M.A..  However, plaintiff did not present any argument of substance to support this claim.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  .  .  . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, the court deems this argument waived.

must be reasonable and supported by substantial evidence.  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ evaluated plaintiff's credibility as follows:

In his initial application for benefits, the claimant alleged that he had bipolar disorder and severe anxiety (Exhibit 3E/2).  The claimant asserted that he was unable to work because he could not get up and get to work on time for the two jobs he held, and that he was too anxious to apply for another job (Exhibit 3E/2).  In his Adult Function Report, the claimant stated that on a typical day, he gets up between noon and six p.m., eats, takes his medication at 6 p.m., watches television, plays video games, uses his computer, etches glass, or hangs out with a friend (Exhibit 5E/1). The claimant reports he then eats something, engages in more of the above activities and goes to bed by 3 a.rn. (Exhibit 5E/1).  The claimant reported that he sleeps up to 15 hours at a time (Exhibit 5E/2).  He is unable to drive due to his anxiety (Exhibit 5E/4).  The claimant alleged that he needs someone to accompany him to go places and that he has problems getting along with others because he gets angry easily (Exhibit 5E/5-6).   The claimant asserted that he has difficulty remembering, concentrating, handling stress, and coping with changes to routine (Exhibit 5E/6-7). On appeal, the claimant alleged that his condition was unchanged (Exhibit 7E). During his consultative examination, the claimant stated that he was just unable to do things because he "freezes up" and tells himself he cannot do them (Exhibit 7F/2). In addition, the claimant reported that his periods of depression last from one hour to two weeks (Exhibit 7F/2).

(AR 92).

The ALJ also pointed out a number of inconsistencies in plaintiff's testimony:

The claimant has been inconsistent in his reporting.  For example, he reported during his consultative examination that he did not attend church (Exhibit 7F/4). However, elsewhere he admitted that he attended the church since 2000, goes several times a week, 20 to 40% of his panic attacks occur there, most of his friends are from church, and he goes over to the church to help out on repairing, painting, and grounds work (Testimony and Exhibits 7F/4 and 14F/5).  In addition, he reported that he has good energy and sleeps less on Ritalin, but he testified at the hearing that he slept 12 hours a day because his anxiety and medications made him sluggish (Testimony and Exhibit 14F/2).  The claimant stated that he is unable to go places along or get along with others (Exhibit 5E/5-6).  However, elsewhere he said that he could go alone if he was walking and that he gets along with his family, friends, neighbors, employers, coworkers, and authority figures (Exhibits 5E/4 and 7F/4). The claimant testified that he has panic attacks two to three times a month, but he stated during treatment that there were no more panic attacks and he was only having

14

> problems with irritability (Testimony and Exhibit 14F/2).  In addition, the claimant admitted that his panic attacks are resolved with Xanax (Testimony).  Overall, the claimant has presented himself as still being unable to function at the hearing, while reporting in treatment that his ability to function is greatly improved (Testimony and Exhibit 14F/2).  Such conflicts in the claimant's own statements are a strong indicator that he is either an unreliable source or that he has not been fully forthcoming in connection with this application.

(AR 93-94).  In addition, the ALJ noted that despite his alleged symptoms, plaintiff has been resistant to treatment and medication recommendations, and has a history of refusing or not taking medication (AR 94).  *See* discussion, *supra*.

The ALJ's decision sets forth contradictions among the medical records, plaintiff's testimony, and other evidence.  *Walters*, 127 F.3d at 531.  Plaintiff's extensive daily activities were inconsistent with his allegations of total disability.  *Id.* at 532 ("[a]n ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments").   In addition, plaintiff's inconsistent statements indicated that he was either an unreliable source or, as the ALJ put it, "he has not been fully forthcoming in connection with this application manipulating his testimony in an effort to qualify for disability" (AR 94).  As Dr. Bell noted, "the claimant is looking for a magic pill, but not too magic as he is going for a disability and needs to be a little bit sick to get the disability, which he sees as the whole solution in life" (AR 94).

Finally, plaintiff contends that the credibility determination is flawed because the ALJ did not comply with Social Security Ruling (SSR) 96-7p, which states that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment" without first considering the evidence of record which

may explain "infrequent or irregular medical visits or failure to seek medical treatment." [4]   Here, the ALJ did consider such evidence.  As discussed, *supra*, the ALJ considered plaintiff's statement that plaintiff lacked income and insurance, and observed that while plaintiff benefitted from free services in the past, he did not seek out other free services.  In this regard, plaintiff's medical record in this case,  which consists of 285 pages (AR 324-609), demonstrates that he was able to obtain regular medical services as well as prescription drugs.  There is no compelling reason to disturb the ALJ's credibility determination.  *Smith*, 307 F.3d 377 at 379.  Accordingly, plaintiff's claim of error will be denied.

## IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence.  Accordingly, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion shall be issued forthwith.

Dated:  September 30, 2014                             /s/ Hugh W. Brenneman, Jr.
                                                       HUGH W. BRENNEMAN, JR.
                                                       United States Magistrate Judge

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency.  20 C.F.R. § 402.35(b)(1).  While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*,  167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson*, 378 F.3d at 549 (citations omitted).